UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MARK W. BURNS and ELIZABETH BURNS, Plaintiffs, | : | |
| v. | : | CA 07-054 S |
| COLLEEN CONLEY and FEDERAL HOME LOAN MORTGAGE CORPORATION, Defendants. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court are two motions filed in the above matter: Federal Home Loan Mortgage Corporation's Motion to Dismiss Under Rule 12(b)(6) (Document ("Doc.") #3) ("Motion to Dismiss") and Plaintiffs' Motion for Judgment on the Pleadings (Doc. #9) ("Motion for Judgment") (collectively the "Motions"). The Motions have been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons explained below, I recommend that the Motion to Dismiss be granted and that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendant Colleen Conley and remand this action to the Providence Superior Court.

**Facts and Travel**

On or about March 8, 1986, Plaintiffs Mark W. Burns and Elizabeth Burns ("Plaintiffs") purchased certain real property known as 26 Valley Street in Cumberland, Rhode Island ("the property"). See Complaint ¶ 4. The property was encumbered by a mortgage held by the Pawtucket Institute for Savings. See id. ¶ 5. The mortgage was subsequently assigned to Defendant Federal

Home Loan Mortgage Corporation ("Freddie Mac").[1] See Complaint ¶ 6.

At some point in 1995, Plaintiff fell in arrears in the payments of the mortgage. See id. ¶ 7. On or about February 24, 1995, Plaintiff Mark Burns filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court"). See id. ¶ 8. Despite knowledge of the bankruptcy filing, Freddie Mac foreclosed on the mortgage and transferred the property to itself by way of a mortgagee's deed dated March 8, 1995, which was recorded in the land evidence records in the Town of Cumberland on March 16, 1995. See id. ¶ 12.

On or about March 20, 1995, Freddie Mac filed a motion in the Bankruptcy Court to lift the stay so that it could proceed against the property. See id. ¶ 13. On July 6, 1995, the Bankruptcy Court issued a Decision and Order, denying Freddie Mac's motion and declaring the mortgagee's deed to be void. See id. ¶ 14; see also Memorandum in Support of Motion to Dismiss ("Freddie Mac Mem."), Exhibit ("Ex.") A (Decision and Order[2]). Approximately eight months later, on March 13, 1996, the Decision and Order was recorded in the land evidence records in the Town of Cumberland. See Complaint ¶ 13; see also Decision and Order at 5. However, Freddie Mac did not issue a corrective deed to reflect that title remained in Plaintiffs notwithstanding the

---

[1] "Freddie Mac is a federally chartered, sponsored, and regulated corporation that purchases home mortgages from lenders and sells securities to the public to fund the purchases." Paslowski v. Standard Mortgage Corp. of Georgia, 129 F.Supp.2d 793, 796 n.3 (W.D. Pa. 2000); see also Weidman v. Fed. Home Loan Mortgage Corp., 338 F.Supp.2d 571, 573 (E.D. Pa. 2004)(explaining that Freddie Mac "was created by Congress in 1970 to help stabilize the market for residential mortgages").

[2] Hereinafter when citing to the Decision and Order, the Court cites directly to that document.

mortgagee's deed. See Complaint ¶¶ 20-21.

Plaintiffs at all times continued to reside at the property. See id. ¶ 16. As a result of the recording of the mortgagee's deed, various bills, including sewer assessments levied by the Town of Cumberland on the property, were sent to Freddie Mac. See id. ¶ 17. Freddie Mac did not pay these bills or forward them to Plaintiffs. See id. ¶ 19. Plaintiffs were unaware of the sewer assessments. See id. ¶ 33.

On or about September 15, 2005, the tax collector of the Town of Cumberland conducted a tax sale of the property. See id. ¶ 22. Plaintiffs allege on information and belief that notice of the tax sale was provided to Freddie Mac, but Freddie Mac did not notify them of the sale. See Complaint ¶¶ 23-24. Plaintiffs further allege that no notice was ever provided directly to them. See id. ¶¶ 25, 33. At the tax sale, the property was conveyed by the tax collector to Defendant Colleen Conley ("Conley"). See id. ¶ 27. On September 20, 2005, the collector's deed reflecting this conveyance was recorded in the land evidence records of the Town of Cumberland. See Freddie Mac Mem., Ex. B (Collector's Deed) at 1.

A little more than one year later, on September 29, 2006, Conley filed a miscellaneous petition in the Providence County Superior Court to foreclose the right of redemption in the property. See Complaint ¶ 28; see also Freddie Mac Mem., Ex. C at 1 (Notice of Filing of Petition). No notice of the filing of this action was sent to Plaintiffs. See Complaint ¶ 29. Plaintiffs allege that notice was provided to Freddie Mac, but Freddie Mac never provided them with this notice. See id. ¶¶ 30-31. Plaintiffs further allege that Freddie Mac never filed an answer or other response to the petition filed by Conley. See id. ¶ 32.

On November 14, 2006, the Superior Court entered a final

decree, foreclosing and barring all rights of redemption under the deed given by the collector for the Town of Cumberland. See Colleen Conley v. Federal Home Loan Mortgage Corporation, PM No. 06-5124 (R.I. Super. Ct. Nov. 14, 2006)(Final Decree in Tax Lien Case).[3] Plaintiffs did not learn of the tax sale and of Conley's action to foreclose their right of redemption until after the final decree was entered. See Complaint ¶ 33.

On January 9, 2007, Plaintiffs filed a complaint in the Providence Superior Court against Conley and Freddie Mac ("Defendants"). See Complaint; see also Memorandum in Support of Motion for Judgment on the Pleadings ("Plaintiffs' Judgment Mem.") at 4. In their prayer for relief, Plaintiffs sought an order which would: 1) enjoin Defendants from alienating or encumbering title to the property and from evicting Plaintiffs from it; 2) declare the mortgagee's deed dated March 8, 1995, null and void; 3) require Defendants to execute a deed conveying the property to Plaintiffs; 4) void the tax sale of the property and vacate the final decree entered in PM06-5124 on November 14, 2006; and 5) award compensatory damages. See Complaint (prayer for relief). Freddie Mac removed the action to this Court on February 8, 2007, pursuant to 12 U.S.C. § 1452(f).[4]

---

[3] The Court takes judicial notice of documents filed in Colleen Conley v. Federal Home Loan Mortgage Corporation, PM No. 06-5124 (R.I. Super. Ct. filed Sept. 29, 2006). See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990)("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."); E.I. Du Pont de Nemours & Co. v. Cullen, 791 F.2d 5, 7 (1st Cir. 1986)(taking judicial notice of a complaint filed in a state action).

[4] Title 12 U.S.C., § 1452(f) includes a provision which authorizes Freddie Mac to remove actions brought against it in state court to federal court:

> Actions by and against the Corporation; jurisdiction; removal of actions; attachment or execution issued against the Corporation

On February 13, 2007, Freddie Mac filed the instant Motion to Dismiss. The Court conducted a hearing on the Motion to Dismiss on March 12, 2007. At the hearing it appeared to the Court, based on statements by counsel for Freddie Mac and Plaintiffs, that a settlement between Freddie Mac and Plaintiffs was possible. Accordingly, the Court continued the matter to April 5, 2007, to allow counsel to engage in settlement discussions. See Tape of 3/12/07 Hearing. On April 5, counsel for these two parties reported that they had reached basic agreement regarding resolution of the claims against Freddie Mac, but differed as to how the settlement would be implemented. See Tape of 4/5/07 Hearing. The sticking point was that Plaintiffs wanted Freddie Mac to remain a party in the case even though the claims against Freddie Mac were to be dismissed as part of the settlement. See id. Counsel for Plaintiffs explained that he believed Freddie Mac's continued involvement in the case was necessary in order to insure that the complete relief which

---

> Notwithstanding section 1349 of Title 28 or any other provision of law, (1) the Corporation shall be deemed to be an agency included in sections 1345 and 1442 of such Title 28; (2) all civil actions to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value; and (3) **any civil or other action, case or controversy in a court of a State**, or in any court other than a district court of the United States, **to which the Corporation is a party may at any time before the trial thereof be removed by the Corporation, without the giving of any bond or security, to the district court of the United States for the district and division embracing the place where the same is pending**, or, if there is no such district court, to the district court of the United States for the district in which the principal office of the Corporation is located, by following any procedure for removal of causes in effect at the time of such removal.

12 U.S.C. § 1452(f) (bold added).

Plaintiffs were seeking could actually be implemented. See Tape of 4/5/07 hearing.

Noting that he had filed a Motion for Judgment against Conley, Plaintiffs' counsel suggested that the hearing on the Motion to Dismiss be continued to the date of the hearing on the Motion for Judgment. See id. He opined that doing so could resolve the sticking point because no objection had been filed to the Motion for Judgment, and he anticipated that it would be granted by the Court. See id. If it were, Plaintiffs' counsel stated that a consent order which Plaintiffs and Freddie Mac had negotiated could be entered because at that point Freddie Mac's continued involvement in the case would be a moot point.[5] Counsel for Freddie Mac endorsed this proposed course of action. The Court agreed to continue the hearing on the Motion to Dismiss to the date of the hearing on the Motion for Judgment.

On April 23, 2007, the Court conducted a hearing on the two Motions. See Tape of 4/23/07 hearing. No objection to the Motion for Judgment was filed, and no one appeared for Conley, although her counsel had been given notice of the hearing. See Docket; see also Tape of 4/23/07 hearing. Counsel for Plaintiffs argued that the Court should grant the Motion for Judgment against Conley and that such action would enable Plaintiffs and Freddie Mac to implement their settlement agreement. See Tape of 4/23/07 hearing. In response to a question from the Court, counsel for Freddie Mac indicated that he favored the approach suggested by Plaintiffs' counsel.[6] See id. After listening to further brief argument, the Court took the Motions under

---

[5] A copy of the proposed consent order was subsequently submitted to the Court at the April 23, 2007, hearing. The Court requested the document for informational purposes. See Tape of 4/23/07 Hearing.

[6] Notwithstanding this apparent agreement, the Court has concluded that considerations of comity prevent it from adopting the procedure advocated by counsel. See Discussion infra at 22-23.

advisement.

**Standard of Review**

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the stated facts in the light most favorable to the pleader, In Re Credit Suisse First Boston Corp., 431 F.3d 36, 51 (1st Cir. 2005); see also Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F.Supp.2d 491, 493 (D.R.I. 1998), taking all well-pleaded allegations as true and giving the pleader the benefit of all reasonable inferences that fit the pleader's stated theory of liability, Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005); see also Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. See Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir. 1995); Hart v. Mazur, 903 F.Supp. 277, 279 (D.R.I. 1995). The Court "should not grant the motion unless it appears to a certainty that the [pleader] would be unable to recover under any set of facts." Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir. 1996); accord Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957); see also Arruda v. Sears, Roebuck & Co., 310 F.3d at 18 ("[W]e will affirm a Rule 12(b)(6) dismissal only if 'the factual averments do not justify recovery on some theory adumbrated in the complaint.'")(citation omitted).

The Court, however, is not required to "credit bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006)(internal quotation marks omitted); see also Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d at 5 (same). Rule 12(b)(6) is forgiving, see Campagna v. Massachusetts Dep't of Envtl. Prot., 334 F.3d 150,

155 (1st Cir. 2003), but it "is not entirely a toothless tiger," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005)(quoting Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 67 (1st Cir. 2004)(quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989))). A plaintiff must allege facts in support of "each material element necessary to sustain recovery under some actionable legal theory." Campagna v. Massachusetts Dep't of Envtl. Prot., 334 F.3d at 155.

The jurisprudence of Rule 12(b)(6) requires that the Court consider not only the complaint, but also matters fairly incorporated within it and susceptible to judicial notice. Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000). Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. Beddall v. State St. Bank & Trust, 137 F.3d 12, 17 (1st Cir. 1998). From this amalgam, the Court extracts well-pleaded facts and draws all reasonable inferences favorable to the complainant. Cruz v. Melecio, 204 F.3d at 21-22.

## Discussion

### Subject Matter Jurisdiction

Plaintiffs' Complaint seeks, inter alia, an order voiding the tax sale of the property. See Complaint, Prayer for Relief. Therefore, this case implicates the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341.[7] See Wright v. Pappas, 256 F.3d 635, 637 (7th Cir. 2001)(stating that a tax sale is a mode of tax collection and that "an action to enjoin it, or declare it illegal, or rescind it ... would be barred by the [TIA]"); see also RTC

---

[7] The Tax Injunction Act ("TIA") provides that: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

Commercial Assets Trust v. Phoenix Bond & Indem. Co., 169 F.3d 448, 453 (7th Cir. 1999)(holding that TIA bars federal jurisdiction where plaintiffs sought, inter alia, a declaration that any attempt by defendant county "to sell, garnish upon, levy taxes with respect to, or foreclose on the Property is null and void as a matter of law"); Dawson v. Childs, 665 F.2d 705, 710 (Former 5th Cir. 1982)("In dissolving a lien on property, a federal court interferes with the state's fiscal program just as surely as if it enjoined collection or assessment of the tax itself."); Pontes v. Cunha, 310 F.Supp.2d 447, 451 (D.R.I. 2004) ("[T]he Supreme Court has emphasized that the TIA is to be interpreted broadly and that federal courts are to guard against interpretations of the [TIA] which might defeat its purpose and text.")(second alteration in original)(internal quotation marks omitted).

The TIA is jurisdictional in nature and therefore serves to oust the federal courts of jurisdiction in those cases which fall within its reach. Bank of New England Old Colony, N.A. v. Clark, 986 F.2d 600, 602 (1st Cir. 1993)(citing California v. Grace Brethren Church, 457 U.S. 393, 418-19, 102 S.Ct. 2498, 2513 (1982); id. ("When a court lacks jurisdiction, it has no authority to grant relief[.]"); see also Pontes v. Cunha, 310 F.Supp.2d at 452 (concluding that "the TIA precludes federal court jurisdiction ... unless some other basis for jurisdiction exists that supercedes the TIA"). This case was removed to this Court by Freddie Mac pursuant to 12 U.S.C. § 1452(f). That statute vests Freddie Mac with the power to remove any state court action to which the corporation is a party to federal court. See 12 U.S.C. § 1452(f). Thus, the Court initially confronts a seeming conflict between the statute vesting Freddie Mac with the power to remove "any civil or other action ...," id., and the command of the TIA that a district court shall not

grant relief in cases involving issues of state tax law.

The First Circuit addressed a similar conflict in Bank of New England, 986 F.2d at 601. The case presented a seemingly irreconcilable clash between the statute vesting the Federal Deposit Insurance Corporation ("FDIC") with the power to remove "any action, suit, or proceeding to federal court," 12 U.S.C. § 1819(b)(2)(B), and the TIA, see Bank of New England, 986 F.2d at 601. Approaching the problem, the First Circuit stated that it first had to determine whether the TIA applied to the case. Id. at 602. The court explained that although the TIA was written in absolute terms, it does not apply to every state tax case. Id.

> The courts have recognized a significant exception, the federal instrumentality exception, which allows the United States and its instrumentalities to bring suits on state tax issues in federal court in spite of the Act. Department of Employment v. United States, 385 U.S. 355, 357-58, 87 S.Ct. 464, 466-67, 17 L.Ed.2d 414 (1966).

Bank of New England, 986 F.2d at 602.

After observing that courts differed on whether the FDIC qualifies for this exception and that the First Circuit had not outlined a "'bright line' rule for whether a particular agency is entitled to claim the exception," id. (citing Fed. Reserve Bank v. Comm'r of Corps. & Taxation, 499 F.2d 60, 64 (1st Cir. 1974), the court stated that "we have instituted a flexible test in which 'each instrumentality must be examined in light of its governmental role and the wishes of Congress as expressed in relevant legislation." Id. (quoting Federal Reserve Bank, 499 F.2d at 64). The court then considered the FDIC's governmental role in the case and found that it was minimal. Bank of New England, 986 F.2d at 603.

The court next examined the relevant legislation. See id. After doing so, the court observed that Congress knew how to make an agency a federal instrumentality and assumed that Congress had

chosen not to do so with the FDIC "as the pertinent language is missing from the statute." Bank of New England, 986 F.2d at 603. Accordingly, the court concluded that because "the FDIC cannot claim to be a federal instrumentality in this case, the [TIA] applies." Id.

Having made this determination, the court proceeded to address the apparent conflict between the statute authorizing the FDIC to remove any action to federal court, see 12 U.S.C. § 1819(b)(2)(B), and the TIA, see Bank of New England, 986 F.2d at 603. Finding that there were uncertainties in the language, structure, and history of § 819(b), the court held that the removal statute did not "clearly and manifestly evince[] an intent to trump the [TIA]," id. at 604, and that, therefore, the removal statute was subject to the limitation on federal jurisdiction in the TIA, see id. As a result, the court found that the district court was correct in determining that the case belonged in state court. See id.

In determining whether the TIA applies in the instant case, this Court will apply the same analysis employed by the court in Bank of New England. It does not appear that any other court has considered the question of whether Freddie Mac qualifies for the federal instrumentality exception to the TIA. Thus, the Court proceeds directly to the "flexible test," id. at 602, and examines Freddie Mac in light of its governmental role and the wishes of Congress expressed in the relevant legislation, id. at 603.

In considering Freddie Mac's governmental role, this Court notes that the First Circuit did not focus in Bank of New England on the FDIC's governmental role in general, but rather focused solely on its role in the case before it. Id. Adhering to this path and focusing only on Freddie Mac's governmental role in the instant case, this Court finds that it is minimal. The

litigation appears to have been triggered by Conley's action in advising Plaintiffs to vacate the property. See Tape of 3/12/07 Hearing. This apparently caused Plaintiffs to investigate and led to their discovery of the tax sale and the final decree which on its face foreclosed their right of redemption.

As in Bank of New England, there are no issues of intergovernmental tax immunity in this case. See Bank of New England, 986 F.2d at 603. Although the Complaint alleges that Plaintiffs seek compensatory damages, see Complaint (prayer for relief), Plaintiffs' counsel indicated at the April 23, 2007, hearing that they were not pressing this claim against either Freddie Mac or Conley, see Tape of 4/23/07 Hearing. Thus, it does not appear there is any danger that if Plaintiffs are successful Freddie Mac will suffer any financial loss which would impact negatively its "public statutory mission: to maintain the secondary mortgage market and assist in meeting low- and moderate-income housing goals." Mendrala v. Crown Mortgage Co., 955 F.2d 1132, 1140-41 (7th Cir. 1992); see also Am. Bankers Mortgage Corp. v. Fed. Home Loan Mortgage Corp., 75 F.3d 1401, 1406-07 (9th Cir. 1996)("The congressional purposes for Freddie Mac are clearly designed to serve the public interest by increasing the availability of mortgages on housing for low- and moderate-income families and by promoting nationwide access to mortgages.").

Turning to the relevant legislation, it appears that Congress intended to accord Freddie Mac, unlike the FDIC, federal instrumentality status for the purposes of the TIA. The Court reaches this conclusion employing the same method of statutory comparison which the First Circuit used in Bank of New England. See Bank of New England, 986 F.2d at 603. Like the Federal Savings and Loan Insurance Corporation, which the First Circuit found was granted agency status for all purposes, including the

TIA, see Bank of New England, 986 F.2d at 603, Freddie Mac is similarly granted agency status by 12 U.S.C. § 1452(f) for all purposes, including the TIA. Section 1452(f) begins with the phrase: "**Notwithstanding** section 1349 of Title 28 or **any other provision of law ....**" § 1452(f) (bold added). This Court interprets the words "any other provision of law," id., to include the TIA.

Accordingly, based on Freddie Mac's role in this case and the apparent wishes of Congress as expressed in § 1452(f), I find that Freddie Mac is a federal instrumentality. Thus, the TIA does not apply so as to deprive this Court of subject matter jurisdiction to hear the Motion to Dismiss.

**Motion to Dismiss**

Having determined that the Court has jurisdiction to consider the Motion to Dismiss, the Court now turns to that Motion. Plaintiffs claim that Freddie Mac breached two distinct duties. First, Plaintiffs allege that because of the improperly recorded mortgagee's deed, various bills, including sewer assessments levied by the Town of Cumberland, were sent to Freddie Mac to pay. See Complaint ¶ 17. Plaintiffs assert that Freddie Mac undertook a duty to Plaintiffs to see that said bills were paid or were forwarded to the Plaintiffs in a timely fashion. See id. ¶ 18. Plaintiffs further assert that Freddie Mac breached that duty by failing to either pay or forward the assessments. Id. ¶ 19. Second, Plaintiffs claim that Freddie Mac had a duty to issue a corrective deed, "placing record title back in their name," id. ¶ 20, and that by failing to re-convey the property to them Freddie Mac breached that duty, id. ¶ 21.

In support of the Motion to Dismiss, Freddie Mac argues that because Plaintiffs were at all relevant times record owners of

the property, it had no duty to pay or forward the assessments.[8] See Freddie Mac Mem. at 6. Relatedly, it contends that because the mortgagee's deed was a nullity, Freddie Mac had no duty to re-convey the property.[9] See id. Thus, Freddie Mac asserts that it cannot be liable to Plaintiffs as a matter of law. See id.

Accepting the allegations of the Complaint as true, the Court sees no basis on which to find that Freddie Mac had a duty to pay the sewer assessments. Freddie Mac did not own the property. There is no suggestion that when the mortgage was assigned to Freddie Mac it assumed a contractual obligation requiring such payments. Indeed, Plaintiffs have not presented any argument to support their contention that Freddie Mac had such a duty. See Memorandum in Opposition to Motion to Dismiss ("Plaintiffs' Opp. Mem."); see also Plaintiffs' Reply Memorandum[10]

---

[8] Freddie Mac's argument that Plaintiffs were at all relevant times the record owners of the property is based on three facts which Plaintiffs have either pled or clearly espouse. First, Judge Votolato found in his Decision and Order that title did not pass to Freddie Mac and that the execution, delivery, and recording of the mortgagee's deed were all void. See Decision and Order at 5. Second, the tax sale was conducted in violation of statutory requirements and was invalid. See Complaint ¶¶ 25-26; Plaintiffs' Reply Memorandum (Doc. #8) ("Plaintiffs' Reply Mem.") at 1; see also Baxter v. Patenaude, 78 A. 625, 631 (R.I. 1911) (holding that where collector failed to give notice of tax sale to owner of record a tax deed resulting from said sale has no binding force or effect as against that owner); Thurston v. Miller, 10 R.I. 358, 1872 WL 3613, at *5 (R.I. 1872)(holding that "[t]he collector had no authority to sell the share of any one of the heirs not ... notified"). Third, the petition which Conley filed to foreclose the right of redemption failed to substantially comply with statutory requirements in that it did not provide notice to record owners in fee title to property. See Complaint ¶¶ 28-29, 33; Plaintiffs' Reply Mem. at 1.

[9] Freddie Mac also contends that the public record made clear that Plaintiffs were, and remained, title owners of the property. See Freddie Mac Mem. at 7.

[10] The Court directs the attention of Plaintiffs' counsel to DRI LR Cv 7(b)(3): "No memorandum other than a memorandum in support of a motion, a memorandum in opposition, and a reply memorandum may be filed without prior leave of the court." Plaintiffs' Reply Memorandum

(Doc. #8) ("Plaintiffs' Reply Mem."). Accordingly, to the extent that Plaintiffs' claims are based on the contention that Freddie Mac had a duty to pay the taxes on the property, such claims fail.

The Court turns next to Plaintiffs' alternative allegation that Freddie Mac had a duty to forward to them the sewer assessments and subsequent notice and that it breached that duty. See Complaint ¶¶ 18-19. To the extent that this claim is grounded in negligence, Plaintiffs must prove a legally cognizable duty owed by Freddie Mac to Plaintiffs, a breach of that duty, proximate causation between the conduct and the resulting injury, and actual loss or damage. See Selwyn v. Ward, 879 A.2d 882, 886 (R.I. 2005); see also Gray v. Derderian, 371 F.Supp.2d 98, 104-105 (D.R.I. 2005)("To make a *prima facie* case of negligence under Rhode Island law, Plaintiffs must show that 1) Defendants owed them a legal duty to refrain from negligent activities; 2) Defendants breached that duty; 3) the breach proximately caused Plaintiffs' injuries; and 4) actual loss or damages resulted." (citing Splendorio v. Bilray Demolition Co., 682 A.2d 461, 466 (R.I.1996))).

The element of duty was discussed by Senior Judge Ronald R. Lagueux in Gray v. Derderian:

> The Rhode Island Supreme Court has pointed out that "every negligence case begins with a consideration of whether a legally cognizable duty runs from the defendant to the plaintiff." Kenney Mfg. Co. v. Starkweather & Shepley, Inc., 643 A.2d 203, 206 (R.I. 1994). The existence of a duty is a question of law to be determined by the court. Ferreira v. Strack, 636 A.2d 682, 685 (R.I. 1994). The Rhode Island Supreme Court in Ferreira noted that there is no "universal test" to determine the existence of a duty, but instead the court employs "an *ad hoc* approach of considering all relevant factors." 636 A.2d at 685.

should not have been filed without permission of the Court.

Gray v. Derderian, 371 F.Supp.2d at 104-05. Judge Lagueux further noted that in Banks v. Bowen's Landing Corp., 522 A.2d 1222 (R.I. 1987), the Rhode Island Supreme Court identified five factors to be considered in applying the ad hoc test:

> (1) the foreseeability of harm to the plaintiff,
> (2) the degree of certainty that the plaintiff suffered an injury,
> (3) the closeness of connection between the defendant's conduct and the injury suffered,
> (4) the policy of preventing future harm, and
> (5) he extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach.

Gray v. Derderian, 522 A.2d at 1225 (quoting Banks v. Bowen's Landing Corp., 522 A.2d at 1225).

The Court applies the above five factors to the instant matter. Taking them in order, the Court concludes that the forseeability of harm to Plaintiffs as a result of Freddie Mac's failure to forward the sewer assessments to Plaintiffs is relatively low. The fact that Freddie Mac received the sewer assessments would not necessarily have informed Freddie Mac of the fact that the assessments had not been sent to Plaintiffs. Freddie Mac could have assumed that the assessments were simply duplicates of assessments which had been sent to Plaintiffs.

Freddie Mac's alleged failure to forward the notice of the tax sale and failure to forward notice of the filing of Conley's petition, see Complaint ¶¶ 23-24, 30-31, stand in a somewhat different light. Given Freddie Mac's prior receipt for a number of years of the sewer assessments, the subsequent appearance of a notice of tax sale could be viewed as communicating to Freddie Mac that Plaintiffs had not received the earlier sewer assessments. Such circumstance increases the foreseeability that Plaintiffs would suffer harm if notice of the tax sale were not

forwarded to them. I find the degree of that foreseeability to be moderate.

The foreseeability of harm resulting from Freddie Mac's failure to forward the notice of the filing of Conley's petition is even higher. Receipt of the latter document reasonably could be viewed as communicating to Freddie Mac that the previous sewer assessments had not been paid, that a tax sale had taken place, and that Plaintiffs' right of redemption in the property was at risk. Certainly at this point any assumption that Freddie Mac was simply receiving duplicate notification of what Plaintiffs were receiving would not be well founded.

In sum, I find that the forseeability of harm to Plaintiffs resulting from Freddie Mac's failure to forward the documents varies with the type of document. As to the sewer assessments, the foreseeability of harm was relatively low. As to the notice of tax sale, it was moderate, and as to the notice of filing of Conley's petition, it was high.

As for the second factor, the degree of certainty that Plaintiffs suffered an injury, Plaintiffs claim that they have been forced to file this action to contest Conley's attempt to evict them from the property and that a cloud has been placed upon the title as a result of the tax sale and Conley's foreclosure action. See Plaintiffs' Opp. Mem. at 4. The Court finds that this is sufficient to satisfy the second factor.

Regarding the third factor, the closeness of the connection between the conduct and the injury suffered, the injury which Plaintiffs have suffered is the result of actions taken by third parties (the collector and Conley) with whom Freddie Mac had no relationship. Freddie Mac's failure to forward the sewer assessments, notice of tax sale, and notice of Conley's petition did not cause the injury. The injury is directly attributable to

the actions of the collector and Conley, not Freddie Mac. Therefore, I find that the connection between Freddie Mac's conduct and the injury is not close.

The fourth factor, the policy of preventing future harm, appears to have limited applicability given the unusual factual circumstances which have given rise to this case. To the extent it is applicable, it would tend to favor the existence of a duty on the part of Freddie Mac and similar entities to forward a notice of a tax sale or a notice of the filing of a petition to foreclose the right of redemption.

As for the fifth factor, the extent of the burden to the defendant and the consequences to the community for imposing such a duty, the Court finds that the burden would be substantial and that the consequences to the community would be adverse. It is likely that each month a corporation such as Freddie Mac receives hundreds, if not thousands, of notices relative to properties for which it holds mortgages. Requiring it to forward such notices to the owners of records, even if limited to notices of tax sales and of the filing of foreclosure petitions, would require that it develop and adopt new policies and procedures, train its employees regarding them, and incur additional expenses for their implementation. These additional expenses would ultimately be reflected in higher costs to borrowers which would detrimentally affect the community.

After considering the five factors identified in Gray v. Derderian, 371 F.Supp.2d at 105, the Court concludes that, at most, a legally cognizable duty ran from Freddie Mac to Plaintiffs only as to the forwarding of the notice of tax sale and notice of Conley's petition. I find that no legal duty existed with regard to the forwarding of the sewer assessments.

Having determined that a legal duty existed, the Court

proceeds to consider the second element which Plaintiffs must establish to prevail on a claim of negligence, i.e., that Freddie Mac breached that duty. See Selwyn v. Ward, 879 A.2d at 886. It is undisputed that Freddie Mac did not forward the notice of tax sale and the notice of Conley's petition to Plaintiffs. Therefore, this element is established.

Plaintiffs, however, are unable to establish the third element of proximate causation. Freddie Mac's failure to forward the notice of tax sale and the notice of the filing of Conley's petition did not proximately cause Plaintiffs' injury. In this regard, it is important to bear in mind that Plaintiffs' injury is not that they have lost title to the property. Rather, Plaintiffs' claimed injury is that they have been forced to bring this action to remove a cloud on the title and to defend against Conley's attempt to evict them. Such injury is not the result of Freddie Mac's failures, but is directly attributable to the actions of the collector and Conley.

As Plaintiffs are unable to satisfy the element of proximate causation, it is unnecessary to consider the fourth element, actual loss or damage. Accordingly, I find that to the extent Plaintiffs' claims are based on Freddie Mac's failure to forward the notice of tax sale and the notice of the filing of Conley's petition, such claims are barred because Plaintiffs are unable to prove that such failure proximately caused Plaintiffs' injury.

Plaintiffs also argue that Freddie Mac was negligent in failing to formally re-convey the property to them and that Freddie Mac breached a duty of care because the "improper recording of [the mortgagee's deed] placed the Plaintiffs in peril." Plaintiffs' Opp. Mem. at 3 (citing Palsgraf v. Long Island R.R. Co., 162 N.E. 99 (N.Y. 1928)). However, Plaintiffs acknowledge that they have known since 1995 of Freddie Mac's

failure to file a corrective deed. See Plaintiffs' Opp. Mem. at 2 (stating that "Plaintiffs' bankruptcy attorney ... made repeated requests of Harmon Law Offices, acting for Freddie Mac, to provide a corrective deed, but Freddie Mac did not provide one"). Accordingly, to the extent that Plaintiffs' claims against Freddie Mac are based on the contention that Freddie Mac was negligent in failing to file a corrective deed following the issuance of the July 6, 1995, Decision and Order, such claims are barred by the statute of limitations. See R.I. Gen. Laws §§ 9-1-14(b) (stating three year limit for injuries to the person), 9-1-13(a) (stating ten year limit for all civil actions not otherwise limited).

Plaintiffs further argue that Freddie Mac breached the duty of good faith, which is implicit in any contract, by failing to protect its borrower from the risk its own conduct created. See Plaintiffs' Opp. Mem. at 4. The conduct to which Plaintiffs refer is Freddie Mac's recording of the mortgagee's deed. See id. at 3. While it is true that "the Rhode Island Supreme Court has recognized an 'implied covenant of good faith and fair dealing between parties to a contract so that contractual objectives may be achieved,'" Fleet Nat'l Bank v. Liuzzo, 766 F.Supp. 61, 67 (D.R.I. 1991)(quoting Ide Farm & Stable, Inc. v. Cardi, 297 A.2d 643 (R.I. 1972), "it is important to note that a breach of the duty of good faith gives rise only to a breach of contract claim, not to an independent cause of action in tort," id. Plaintiffs have not alleged a breach of contract claim. Accordingly, the Court finds that Plaintiffs have no contractually based cause of action against Freddie Mac based on breach of the implied duty of good faith and fair dealing. See Hord Corp. v. Polymer Research Corp., 275 F.Supp.2d 229, 237 (D.R.I. 2003)("Claims for breach of the covenant of good faith

sound in contract, not in tort.”).

In summary, to the extent that Plaintiffs’ negligence claims against Freddie Mac are based on a failure to forward notices, the claims are barred because such failure did not proximately cause Plaintiffs’ injury. To the extent that such claims are based on Freddie Mac’s failure to file a corrective deed, such claims are barred by the statute of limitations. Plaintiffs have not alleged a breach of contract claim and, therefore, have no cause of action based on breach of an implied duty of good faith and fair dealing. In short, Plaintiffs have not stated a claim upon which relief may granted. Accordingly, Freddie Mac’s Motion to Dismiss should be granted, and I so recommend.[11]

**Exercise of Supplemental Jurisdiction**

Turning now to the Motion for Judgment against Conley, the Court must first consider whether it should exercise supplemental jurisdiction over these state law claims now that it has determined that Freddie Mac, the entity which provided the original basis for the exercise of federal subject matter jurisdiction, should be dismissed from the action. See Camelio

---

[11] Plaintiffs make a final argument that the persistence of the mortgagee’s deed on the record has created a cloud on Plaintiffs’ title to their home. See Memorandum in Opposition to Motion to Dismiss (“Plaintiffs’ Opp. Mem.”) at 4. They contend that:

> Even undoing the tax sale ... will only return the Plaintiffs to the *status quo ante*. Complete relief can only come from the recording of a corrective deed, which can only come from Freddie Mac. Therefore, even if Freddie Mac were correct that it had done nothing wrong, it would still be needed before the Court in order to give the Plaintiffs all the relief they need to rectify their situation. Thus, the Court should not allow Freddie Mac out of the case, or else the Plaintiffs can only get half way home.

Plaintiffs’ Opp. Mem. at 4. While the Court is not unsympathetic to Plaintiffs’ problem, it is without power to deny dismissal to a party which is legally entitled to that relief.

v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998)("If ... the court dismisses the foundation federal claims, it must reassess its jurisdiction, this time engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue."); see also Che v. Massachusetts Bay Transp. Auth., 342 F.3d 31, 37 (1st Cir. 2003)(stating that in making decision to exercise supplemental jurisdiction "district courts must examine the totality of the circumstances"). "Among the factors that will often prove relevant to this calculation are the interests of fairness, judicial economy, convenience, and comity. Comity is a particularly important concern in these cases." Camelio v. Am. Fed'n, 137 F.3d at 672 (internal citation omitted).

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not unsubstantial in a jurisdictional sense, the state claims should be dismissed as well.

Camelio v. Am. Fed'n, 137 F.3d at 672 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966)).

The First Circuit has instructed that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation." Id. Here the Court has concluded that the claims against Freddie Mac, which provided the basis for the exercise of subject matter jurisdiction, should be dismissed and this has occurred at an early stage of the litigation.

Also weighing strongly against the exercise of jurisdiction are considerations of comity. Among the relief which Plaintiffs seek is an order vacating the final decree entered by the Superior Court on November 14, 2006, in PM 06-5124. See

Complaint (prayer for relief). Given that considerations of comity require that state courts be afforded the opportunity, in the first instance, to correct a constitutional violation before a federal court intervenes, Byrnes v. Vose, 969 F.2d 1306, 1308 (1st Cir. 1992), surely those same considerations are even stronger when a plaintiff alleges that a state court decree should be vacated because of a failure to comply with state law, cf. Tomaiolo v. Mallinoff, 281 F.3d 1, 7 (1st Cir. 2002) (explaining that "if underlying [plaintiff's] federal arguments is a fundamental assertion that defendants violated state law, all the more reason to defer to the state system"). The fact that counsel for both Plaintiffs and Freddie Mac expressed a desire that the Court decide the Motion for Judgment is not dispositive of the issue. See Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 9 n.7 (1st Cir. 2002)("a federal court's discretionary authority to defer to a state court due to comity reasons may be invoked regardless of whether the parties request it").

Given that Plaintiffs originally filed this action in the superior court, the Court sees no unfairness in returning them to that forum. In terms of judicial economy, remanding the case will be beneficial since it will provide a state court with the opportunity to correct an allegedly erroneous state court final decree. It will also avoid having this Court decide matters which involve questions solely of state law. The fact that those matters of state law implicate the process which municipalities use to collect unpaid taxes is an additional reason that this Court should decline to exercise supplemental jurisdiction. Accordingly, I conclude that the Court should decline to exercise supplemental jurisdiction over the claims against Conley and that the matter should be remanded to the state superior court.

## Conclusion

For the reasons stated above, I recommend that Freddie Mac's Motion to Dismiss be granted. I further recommend that the Court decline to exercise supplemental over Plaintiffs' claims against Conley and that this matter be remanded to the Providence Superior Court.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days[12] of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
May 7, 2007

[12] The ten days do not include intermediate Saturdays, Sundays, and legal holidays. See Fed. R. Civ. P. 6(a).