UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Mark W. Burns and Elizabeth Burns,<br>Plaintiffs,<br>v.<br>Colleen Conley and Federal Home Loan Mortgage Corporation,<br>Defendants. | C.A. No. 07-054-S |

**DECISION AND ORDER**

William E. Smith, United States District Judge.

Before the Court is an objection to Magistrate Judge Martin's Report and Recommendation to grant Defendant Federal Home Loan Mortgage Corporation's ("Freddie Mac")[1] Motion to Dismiss under 12(b)(6) and that the Court decline to hear Plaintiffs Mark W. Burns and Elizabeth Burns's ("Plaintiffs") Motion for Judgment on the Pleadings. For the reasons explained below, the Court declines to accept the Report and Recommendation, GRANTS Plaintiffs' unopposed Motion for Judgment, and DENIES the Motion to Dismiss

[1] "Freddie Mac is a federally chartered, sponsored, and regulated corporation that purchases home mortgages from lenders and sells securities to the public to fund the purchases." Paslowski v. Standard Mortgage Corp. of Ga., 129 F. Supp. 2d 793, 796 n.3 (W.D. Pa. 2000).

(without prejudice) as moot in light of the settlement reached between Plaintiffs and Freddie Mac.

I. Background[2]

On or about March 8, 1986, Mark and Elizabeth Burns purchased certain real property known as 26 Valley Street in Cumberland, Rhode Island. The property was encumbered by a mortgage held by Pawtucket Institute for Savings. The mortgage was subsequently assigned to Freddie Mac.

In early 1995, Plaintiffs fell in arrears in the payments of the mortgage. On or about February 24, 1995, Mark Burns filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the District of Rhode Island. Despite knowledge of the bankruptcy filing, Freddie Mac foreclosed on the mortgage and transferred the property to itself by way of a mortgagee's deed dated March 8, 1995, which was recorded in the land evidence records in the town of Cumberland, Rhode Island on March 16, 1995.

On or about March 20, 1995, Freddie Mac filed a motion in the Bankruptcy Court to lift the automatic stay so that it could proceed against the property. On July 6, 1995, the Bankruptcy Court issued a Decision and Order, denying Freddie Mac's motion and declaring the mortgagee's deed to be void. See In re Burns, 183 B.R. 670 (Bankr. D.R.I. 1995). Approximately eight months later,

---

[2] This factual recitation is taken in part from the Magistrate Judge's Report and Recommendation.

on March 13, 1996, the Decision and Order was recorded in the land evidence records in the town of Cumberland. Freddie Mac never issued a corrective deed to reflect that Plaintiffs retained title notwithstanding the mortgagee's deed.

Plaintiffs at all times continued to reside at the property but, as a result of the recording of the mortgagee's deed, various bills, including sewer assessments levied by the town of Cumberland on the property, were sent only to Freddie Mac. Freddie Mac did not pay these bills or forward them to Plaintiffs, who remained unaware of the sewer assessments.

Consequently, on or about September 15, 2005, the tax collector for the town of Cumberland conducted a tax sale of the property pursuant to R.I. Gen. Laws §§ 44-9-1 et seq.[3] In an apparent oversight, the town provided notice of the tax sale to Freddie Mac, but did not notify Plaintiffs. Freddie Mac did not forward the notification to Plaintiffs. No notice was ever provided directly to them as present owners of record.[4] At the tax sale, the tax collector conveyed the property to defendant Colleen

---

[3] R.I. Gen. Laws §§ 44-9-1 et seq. include provisions which authorize towns to transfer title via tax sales on properties encumbered with delinquent taxes.

[4] On Plaintiffs' behalf, Freddie Mac alleges that the collector's deed failed to conform to the requirements of § 44-9-12 because it did not include a required statement as to whether notice of the sale was given to the Rhode Island Housing and Mortgage Finance Corporation; however, this requirement took effect January 1, 2007 so would appear to not apply to this notice.

Conley. On September 20, 2005, a collector's deed[5] reflecting this conveyance was recorded in the land evidence records of the town of Cumberland.

A little more than one year later, on September 29, 2006, Conley filed a miscellaneous petition in the Providence County Superior Court to foreclose the right of redemption in the property. Conley sent notice of the petition to Freddie Mac, but did not notify Plaintiffs. In the notice sent to Freddie Mac, Conley did not list Plaintiffs as a respondent. Freddie Mac never forwarded this notice to Plaintiffs. Plaintiffs further allege that Freddie Mac never filed an answer or other response to the petition filed by Conley.

On November 14, 2006, the Rhode Island Superior Court entered a final decree, foreclosing and barring all rights of redemption under the collector's deed. See Conley v. Fed. Home Loan Mortgage Corp., PM No. 06-5124 (R.I. Super. Ct. Nov. 14, 2006) (Final Decree in Tax Lien Case).[6] Plaintiffs did not learn of the tax sale and

---

[5] A "collector's deed" is subject only to the Debtor's statutory right of redemption and exists for at least one year following the tax sale, and thereafter until a tax purchaser files a petition for foreclosure of redemption. See R.I. Gen. Laws §§ 44-9-21 (2003) and 44-9-25 (2007); Pontes v. Cunha (In re Pontes), 310 F. Supp. 2d 447, 449 (D.R.I. 2004).

[6] The Court takes judicial notice of documents filed in Conley v. Fed. Home Loan Mortgage Corp., PM No. 06-5124 (R.I. Super. Ct. filed Sept. 29, 2006). See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings

of Conley's action to foreclose their right of redemption until after the superior court judge entered the final decree.

On January 9, 2007, Plaintiffs filed a complaint in the Superior Court against Conley and Freddie Mac. In their prayer for relief, Plaintiffs sought an order which would: 1) enjoin Conley from alienating or encumbering title to the property and from evicting Plaintiffs; 2) declare the mortgagee's deed dated March 8, 1995 null and void; 3) require Freddie Mac to execute a corrective deed conveying the property to Plaintiffs; 4) void the tax sale of the property and vacate the final decree entered in PM06-5124 on November 14, 2006; and 5) award compensatory damages. Pursuant to 12 U.S.C. § 1452(f),[7] Freddie Mac removed the action to this Court on February 8, 2007.

On February 13, 2007, Freddie Mac filed this Motion to Dismiss.[8] The Magistrate Judge conducted a hearing on the Motion to Dismiss on March 12, 2007. Based on statements by counsel at

---

have relevance to the matters at hand."); E.I. Du Pont de Nemours & Co. v. Cullen, 791 F.2d 5, 7 (1st Cir. 1986) (taking judicial notice of a complaint filed in a state action).

[7] Title 12 U.S.C. § 1452(f) includes a provision which authorizes Freddie Mac to remove actions brought against it in state court to federal court.

[8] Freddie Mac believes that although the Burns are entitled to an order declaring that they hold fee title to the subject premises, and to a declaration that the tax sale and subsequent tax foreclosure were invalid, Freddie Mac is not a proper Defendant in this action, and does not need to be a defendant in order for the Burns to obtain relief.

the hearing, it appeared to the Magistrate Judge that a settlement between Freddie Mac and Plaintiffs was possible. Accordingly, the Court continued the matter to April 5, 2007, to allow counsel time to engage in settlement discussions.

On April 5, 2007, counsel for these two parties reported that they had reached basic agreement regarding resolution of the claims against Freddie Mac, but disagreed as to how the settlement would be implemented. The sticking point was that Plaintiffs wanted Freddie Mac to remain a party in the case even though the claims against Freddie Mac were to be dismissed as part of the settlement. Counsel for Plaintiffs explained that he believed Freddie Mac's continued involvement in the case was necessary in order to ensure that the complete relief which his clients sought could actually be implemented.

Noting that he had filed a Motion for Judgment against Conley, Plaintiffs' counsel suggested that the hearing on the Motion to Dismiss be continued to the date of the hearing on the Motion for Judgment. He opined that doing so could resolve the sticking point because no objection had been filed to the Motion for Judgment, and he anticipated that it would be granted by the Court. If it were, he stated that a consent order which Plaintiffs and Freddie Mac had negotiated could be entered because, at that point, Freddie Mac's

continued involvement in the case would be moot.[9] Counsel for Freddie Mac endorsed this proposed course of action. The Court agreed to continue the hearing on the Motion to Dismiss to the date of the hearing on the Motion for Judgment.

On April 23, 2007, the Magistrate Judge conducted a hearing on the two Motions. Neither defendant objected to the Motion for Judgment, and no one appeared for Conley even though her counsel had been given notice of the hearing. Counsel for Plaintiffs argued that the Court should grant the Motion for Judgment against Conley and that such action would enable Plaintiffs and Freddie Mac to implement their settlement agreement. In response to a question from the Court, counsel for Freddie Mac indicated that he favored the approach suggested by Plaintiffs' counsel.

On May 07, 2007, the Magistrate Judge issued a Report and Recommendation to grant Freddie Mac's Motion to Dismiss. The Magistrate Judge further recommended that this Court decline to exercise supplemental jurisdiction over the claims against Conley and that the matter be remanded back to state court.

On June 29, 2007, this Court held a hearing in which Plaintiffs' counsel argued that: (1) the lack of notice of the tax sale and the petition to foreclose the right of redemption

---

[9] A copy of the proposed consent order was subsequently submitted to the Court at the April 23, 2007 hearing. The Court requested the document for informational purposes.

invalidates the tax sale and Conley's deed; (2) the Magistrate Judge misconstrued the nature and meaning of Title 28 U.S.C. § 1341, the Tax Injunction Act; (3) the Magistrate Judge improperly found that Freddie Mac did not proximately cause their injuries; and (4) Freddie Mac's removal properly vested this Court with the discretion to hear Plaintiffs' Motion for Judgment against Conley.

At the June 29 hearing, Plaintiffs and Freddie Mac reiterated that a tentative settlement agreement between the two was still in place. Conley once again opted not to appear for the hearing, telling Plaintiffs' counsel by letter "that it was good of them to litigate this matter in federal court, but the proper forum was Rhode Island Superior Court, where the issue would eventually be decided." Conley not only has failed to appear for any proceeding in this matter either before the Magistrate Judge or this Court, she has also failed to file any responsive pleading whatsoever. She has not opposed the present Rule 12(c) motion and has not filed a motion to remand. Despite Conley's confidence that federal court was not the appropriate forum, as will be made clear in this Decision, this Court has proper jurisdiction over the parties. The Court takes Conley's inaction as acquiescence to this Court's jurisdiction and to Plaintiffs' Motion for Judgment.

## II. Discussion

### A. Jurisdiction

The question of jurisdiction caught the Magistrate Judge's eye because this was a state tax case that might implicate the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, which would bar federal court jurisdiction. The Magistrate Judge concluded, however, that because 12 U.S.C. § 1452(f) accords Freddie Mac agency status, it had the authority to remove the action against it to federal court. After analyzing the Magistrate Judge's conclusion, this Court agrees that jurisdiction is appropriate, albeit on slightly different grounds.

At first blush, it might seem as though the TIA would bar this Court from hearing the claims because it is a state tax matter first filed in state court. The TIA plainly states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."[10] 28 U.S.C. § 1341; see Tully v. Griffin, Inc., 429 U.S. 68, 73 (1976) (holding that "[a] federal district court is under an equitable duty to refrain from interfering with a State's collection of its revenue except in cases where an asserted federal

---

[10] State taxation, for § 1341 purposes, includes local taxation. Hibbs v. Winn, 542 U.S. 88, 100 n.1 (2004); Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 528 (1981) (applying the TIA to protect County's interest in collection of taxes).

right might otherwise be lost"). In 2004, the United States Supreme Court clarified the scope of the TIA, ruling that Congress enacted the TIA in order to prevent state taxpayers from coming to federal court to avoid paying their tax bill. Hibbs, 542 U.S. at 105. Hibbs held that "[n]owhere does the legislative history announce a sweeping congressional direction to prevent federal court interference with all aspects of state tax administration." Id. (internal quotations and citation omitted). Instead, the Court in Hibbs explained that the TIA was enacted to achieve two closely related goals:

> (1) to eliminate disparities between taxpayers who could seek injunctive relief in federal court-usually out-of-state corporations asserting diversity jurisdiction-and taxpayers with recourse only to state courts, which generally required taxpayers to pay first and litigate later; and (2) to stop taxpayers, with the aid of a federal injunction, from withholding large sums, thereby disrupting state government finances.

Id. at 104 (citing S. Rep. No. 75-1035, at 1-2 (1937)). After Hibbs, therefore, the TIA reaches cases only in which state taxpayers seek federal court orders enabling them to avoid paying state taxes or where the taxpayer intends to frustrate the collection of state tax revenue. See May Trucking Co. v. Oregon Dep't of Transp., 388 F.3d 1261, 1267 (9th Cir. 2004) (holding that the dispositive question in determining whether the TIA's jurisdictional bar applies is whether "[f]ederal court relief . .

. would have operated to reduce the flow of state tax revenue") (internal quotations and citation omitted).

Here, because this case does not implicate either of the goals set forth in Hibbs, the TIA does not bar jurisidiction. See 542 U.S. at 107. This case, removed to federal court by Freddie Mac pursuant to 12 U.S.C. § 1452(f), hinges on whether Plaintiffs failed to receive adequate due process before the tax sale and the foreclosure proceeding. Plaintiffs do not challenge the power of the town to levy sewer assessments and to conduct tax sales; they would have paid the taxes had they received notice. Instead, they assert that the inadequate notice accorded to them violates Rhode Island statutes governing tax sales and foreclosures. See id.; Luessenhop v. Clinton County, New York, 466 F.3d 259, 261 (2nd Cir. 2006) (holding that a court has jurisdiction, consistent with the TIA, over taxpayers' challenge that the notice of foreclosure arising out of unpaid property taxes was constitutionally inadequate, where taxpayers were not attempting to avoid paying state property taxes, contesting state authority to collect property taxes, or contesting assessments or amounts owed).[11]

---

[11] Consequently, because this Court has subject matter jurisdiction based on Freddie Mac's removal, the Court is well within its discretion under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the state law claims against Conley. See Tomaiolo v. Mallinoff, 281 F.3d 1, 11 (1st Cir. 2002); Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996).

B. Motion For Judgment

In their Motion for Judgment on the Pleadings, Plaintiffs seek a decree setting aside both the tax sale and the subsequent decree foreclosing their equity of redemption.[12] Plaintiffs base their motion on due process grounds, arguing that a complete lack of notice of the tax sale and petition to foreclose redemption violates state law governing tax sales. See R.I. Gen. Laws §§ 44-9-1 et seq.

A motion for judgment on the pleadings is appropriate when it is clear from the pleadings that the movant should prevail. See Fed. R. Civ P. 12(c); Feliciano v. Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998). The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion. Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005); Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998). Per its discretion, the court takes judicial notice of documents taken from public record that have been brought to the attention of the court in the complaint and the pleadings. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178 (1st Cir. 2006); cf. Banco Santander De Puerto Rico v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.), 324 F.3d 12, 15-16 (1st Cir. 2003) (recognizing this principle in the Rule 12(b)(6) context).

---

[12] Plaintiffs also seek an order directing the town clerk to issue a certificate to this effect to Conley.

Conley facilitates a grant of the Motion for Judgment because she has made no appearance before the Court to argue that notice was sufficient.[13]

A ruling on the Motion to Dismiss requires two due process inquiries into the alleged lack of notice: whether the Court should vacate the decree foreclosing Plaintiffs' right to redemption and whether the underlying tax sale was valid.

1. Right of Redemption

Plaintiffs assert that the Court should vacate the decree foreclosing their right to redemption pursuant to § 44-9-24 because they never received notice of the foreclosure petition.[14] Conley

---

[13] Conley may not claim "excusable neglect" in failing to appear because she knew of the proceedings and chose not to participate. Kaercher v. Trs. of Health & Hosps. of Boston, Inc., 834 F.2d 31, 34 (1st Cir. 1987); Kauffman v. Cal Spas, 37 F. Supp. 2d 402, 406 (E.D. Pa. 1999) (denying excusable negligence defense to a party who knowingly chose not to appear).

> A default may be excused and a default judgment opened or set aside where the appearance of the party or his pleading was prevented by excusable neglect . . . .
> . . . .
> Excusable neglect must be based on more than mere forgetfulness on the part of the person or official charged with the duty of responding to the legal process in due time, and is such as might be expected on the part of a reasonably prudent person under the circumstances; utter indifference and inattention to business is not excusable neglect, and failure to pay personal attention to the case is inexcusable negligence.

49 C.J.S. Judgments § 397.

[14] This court is mindful of the language in § 44-9-24 vesting Rhode Island Superior Court with the jurisdiction to hear

purchased the property from the town of Cumberland at a tax sale on September 15, 2005. On September 29, 2006, Conley brought a petition to foreclose all rights of redemption under the title. See R.I. Gen. Laws § 44-9-25. Section 44-9-27 required Conley, upon filing the petition, to employ an attorney or title company "familiar with the examination of land titles" in order to "make an examination of the title sufficient only to determine the persons who may be interested in the title." Conley had the duty to "notify all persons appearing to be interested" by registered or certified mail. See R.I. Gen. Laws § 44-9-27. On the notice, Conley listed Freddie Mac as the sole respondent. The Town, Conley, and Freddie Mac all knew of the foreclosure proceedings, but no one notified Plaintiffs.

Courts must balance the right of taxpayer redemption with the need to quiet title. See, e.g., Albertson v. Leca, 447 A.2d 383, 388 (R.I. 1982) (Rhode Island Tax statute "strikes a fair balance between the interests of the government and private property rights - the state may move quickly to obtain by sale the taxes due, but the owner has ample opportunity to redeem his real estate."). When faced with a petition to foreclose the right of redemption to

---

challenges to foreclosure decrees. However, the Burns originally filed their complaint in superior court, but Freddie Mac removed the case to federal court. Given the current stage of the proceedings and the interest of judicial efficiency, this Court chooses to exercise supplemental jurisdiction. See Belini v. Washington Mut. Bank, FA, 412 F.3d 17, 28 (1st Cir. 2005).

property sold at a tax sale, Rhode Island courts have interpreted § 44-9-31 to hold that a taxpayer who has adequate notice of a tax sale must file an answer "on or before the return day" or be forever barred from contesting title or otherwise challenging the validity of the tax sale. See, e.g., Karayiannis v. Ibobokiwe, 839 A.2d 492, 495 (R.I. 2003). Once the petition is filed, any party in interest entitled to notice of the tax sale who receives **actual** notice of the pendency of the petition to foreclose must raise the notice defense or be estopped from alleging lack of notice in any action to vacate a final decree. See § 44-9-11(c). For example, in Norwest Mortgage, Inc. v. Masse, the court barred a challenge to the validity of a tax sale after the foreclosure judgment had been entered because the secured creditor received proper notice but failed to file an answer. See 799 A.2d 259, 262-63 (R.I. 2002).

Unlike the situation in Norwest, Plaintiffs received no notice whatsoever of Conley's petition until after the final decree barring the right of redemption was issued on November 14, 2006 and therefore does not suffer the consequences of § 44-9-11(c). See id. The complete lack of notice accorded Plaintiffs is similar to, if not more persuasive than, the situation in Zeus Realty Co. v. Jaral Realty, Inc., where the court vacated the foreclosure decree because the notice was faulty and because the "principles of equity favored redemption." 653 A.2d 70, 70 (R.I. 1995).

If Conley had appeared in this matter, she may have claimed that she met the notice requirement because she believed she notified the proper owner. See § 44-9-27. But this argument would fail because Conley had the duty to ascertain the identities of all interested persons, including equity owners, and notify these parties before filing the foreclosure petition. See id. Conley ignored the Decision and Order of the bankruptcy court that clearly placed title in Plaintiffs' hands. It should have been plain to the title company or attorney hired to perform the title search that Plaintiffs were the present owners of record. See Jones v. Flowers, 547 U.S. 220, 234 (2006) (holding that an attempt to provide notice by certified mail may still fall short of due process requirements when the sender should be aware that the mail was not received).

Conley's failure to identify and provide notice to Plaintiffs was both substantial and misleading. Kildeer Realty v. Brewster Realty Corp., 826 A.2d 961, 966 (R.I. 2003) (holding that a harmless error in notice does not require the court to vacate a foreclosure decree). Her failure to name Plaintiffs on the notice of filing petition indicates that she never intended to send notice to the Plaintiffs as equity owners.[15] This defect in notice amounts

---

[15] The notice of filing petition was also defective in that it did not contain a "statement that, unless the notified party shall appear within the fixed time, a default will be recorded, the petition taken as confessed, and the right to redemption forever

to a denial of due process and thus proves fatal to the decree foreclosing the right to redemption. Therefore, the decree is invalid. See § 44-9-35 ("No tax title shall be held to be invalid by reason of any error or irregularity which is neither substantial nor misleading, whether the error or irregularity occurs in the proceedings of the collector or the assessors or in the proceedings of any other official or officials charged with duties in connection with the establishment of the tax title, or in the proceedings to foreclose the rights of redemption as set forth in §§ 44-9-25 – 44-9-33.").[16]

2. Tax Sale

Granting the right to redeem allows Plaintiffs to redeem title in the property pursuant to § 44-9-21. Invalidating the underlying tax sale goes further because it returns title interest to Plaintiffs without the need to redeem the property.

Although the Bankruptcy Court's Decision and Order nullifying Freddie Mac's mortgagee's deed was recorded in the town records, the tax collector sent sewer assessments to Freddie Mac rather than to Plaintiffs. The assessments went unpaid because Freddie Mac did

---

barred" as required by § 44-9-27(b).

[16] The Burns may also seek protection under § 9-21-2, which allows a court to relieve a party from a final judgment, order, decree, or proceeding based on a finding of "[m]istake, inadvertence, surprise, or excusable neglect." See Pleasant Mgmt., LLC v. Carrasco, 870 A.2d 443, 445 (R.I. 2005) (quoting R.I. Gen. Laws § 9-21-2(a)).

not forward these assessments to Plaintiffs. Plaintiffs received no notice of the assessments. As a consequence, the Town conducted a tax sale on September 15, 2005, and conveyed the property to Conley.

"Before a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" Jones, 547 U.S. at 223 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)). Due Process does not require that a property owner receive actual notice before the government may take his property. Id. at 226 (citing Dusenbery v. United States, 534 U.S. 161, 170 (2002)). Rather, it requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. (quoting Mullane, 399 U.S. at 314).

Rhode Island courts have held that a tax sale based on inadequate notice may be declared invalid, and the failure to give notice can amount to a denial of due process. See Sycamore Props., LLC v. Tabriz Realty, LLC, 870 A.2d 424, 428 (R.I. 2005) (citing Robert P. Quinn Trust v. Ruiz, 723 A.2d 1127, 1129 (R.I. 1999) (holding insufficient notice of tax sale to an interested party renders sale invalid)). R.I. Gen. Laws §§ 44-9-10 and 44-9-11

require towns to provide notice of the tax sale to taxpayers and owners of record title by certified or registered mail.[17] It is apparent on the face of the collector's deed that the town failed to comply with the notice provisions set forth in these statutes. The information on the collector's deed indicates that the town only gave notice to Freddie Mac, yet it is undisputed that the Bankruptcy Court's Decision and Order declared Freddie Mac's mortgagee's deed to be null and void and reinstated fee title to Plaintiffs. By not providing Plaintiffs with any notice whatsoever of the tax sale, the town of Cumberland failed to meet its obligations under §§ 44-9-10 and 44-9-11, and denied Plaintiffs their basic right to due process.

In Arnold Road Realty Assocs., LLC v. Tiogue Fire Dist., the Rhode Island Supreme Court affirmed the trial justice's invalidation of a tax sale where it "had been clearly established that the notice of [the] tax sale, preceding the filing of the tax deed, was mistakenly given to a party who was not the owner of the property." 873 A.2d 119, 130 (R.I. 2005) (quoting L. Brayton Foundry Bldg., Inc. v. Santilli, 676 A2d. 1364, 1365 (R.I. 1996)).

[17] Prior to January 1, 2007, § 44-9-10 required the town to provide notice to Plaintiffs as taxpayers by registered or certified mail not less than twenty (20) days before the sale. (After January 1, 2007, forty (40) days notice is required.) § 44-9-11 required the town to provide notice to Plaintiffs as present owners of record by registered or certified mail sent postpaid not less than twenty (20) days before the sale.

"It is well settled that the failure to comply fully with . . . statutory-notice provisions invalidates the attempted tax sale." Id.

Somewhere along the way, Conley has suggested (perhaps in a communication to opposing counsel) that the holding in Phoenix J. Finnegan, a RIGP v. Seaside Realty Trust, 777 A.2d 548 (R.I. 2001) precludes the relief requested by Plaintiffs. In Phoenix, the tax collector notified Seaside and the mortgagees of the property of the impending tax sale but no notice was given to a lessee of the property. See id. at 549. The court concluded that notice to the lessee was not required under § 44-9-11 because the lessee had not recorded the lease, thus, the interest as lessee "was not readily identifiable to either the tax collector or the title examiner employed by Phoenix." Id.; see also Quinn Trust, 723 A.2d at 1129 (declaring § 44-9-11 to be unconstitutional because it "does not provide for mail or personal notice to [] readily identifiable interested parties"). Finnegan is inappositive, however, because unlike the lessee without a recorded lease Plaintiffs were holders of record title.

Failure to comply fully with the statutory provisions of §§ 44-9-1 et seq. invalidates an attempted tax sale. Amy Realty, a RIGP v. Gomes, 839 A.2d 1232, 1235 (R.I. 2004) (citing L. Brayton Foundry Bldg. Inc., v. Santilli, 676 A.2d 1364, 1365 (R.I. 1996)). The lack of notice accorded to Plaintiffs prior to the tax sale is

a denial of due process, and therefore, equity demands that the collector's deed must be declared invalid as to Plaintiffs.

C. Motion to Dismiss

Because the parties have reached a settlement with respect to the Plaintiffs' claims against Freddie Mac, the Court need not decide the Motion to Dismiss.

III. Conclusion

For all of the reasons set forth above, Plaintiffs' Motion for Judgment is GRANTED and Freddie Mac's Motion to Dismiss is DENIED (without prejudice) as moot in light of the parties' settlement.

It is so ordered.

WESmith

William E. Smith
United States District Judge
Date: 11/2/07